**GENERAL CABLE CORPORATION, a New Jersey Corporation, Plaintiff,**

v.

**The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 1798, AFL–CIO, Defendants.**

**Civ. A. No. C–71–300.**

United States District Court,
W. D. Tennessee, W. D.

Oct. 18, 1971.

Andrew M. Kramer, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Samuel J. Weintraub, Weintraub, De-Hart & Kalmans, Memphis, Tenn., for plaintiff.

Howard R. Paul, Memphis, Tenn., for defendants.

## MEMORANDUM ORDER

WELLFORD, District Judge.

In this case the plaintiff employer, General Cable Corporation, has sought a temporary restraining order and also injunctive relief against the defendant, Local 1798, of the International Brotherhood of Electrical Workers, and its officers, restraining them, and all of those in participation with them, from participating in a work stoppage, and seeking mandatory arbitration of an alleged dispute or grievance, which the plaintiff asserts grows out of, and is covered by, the collective bargaining agreement between the Company and the defendant Local.

The relief sought by the plaintiff is, in effect, an order requiring the officers of this Memphis Local to direct their workers to continue at work without a stoppage, and requiring arbitration of the question pertaining to the "no strike —no lockout" provision in the collective bargaining agreement between the Company and the Local, and, furthermore, a determination of the applicability of that provision to the situation which is present in this instance where there has been informational picketing by agents of another local union.

Jurisdiction is claimed under Section 301 of the Norris-LaGuardia Act, 29 U.S.C. § 185, and the Court feels that this is another of those cases that depend upon the proper interpretation of the case of Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). This case involves whether or not the local union did in fact sanction or authorize the stoppage of work, and whether the dispute in question is over a matter

in which the parties are contractually bound to arbitrate.

There has been in effect, at all times during the matters with which we are involved, a collective bargaining agreement between the parties which became effective September 15, 1970, and expires, by its terms, December 31, 1972.

There is apparently a dispute between Locals 1164, 1256 and 1558 of the IBEW, and the plaintiff Company which involves disputes and differences in other sections of the country, including St. Louis, Missouri. These separate locals apparently were covered by separate agreements which are in dispute; and it is apparent that approximately a month before the dispute which arose in this case, these other local unions notified all of the General Cable local unions, including Local 1798, of the fact that negotiations were taking place in New York City, and reported on the status of the negotiations, and suggested that a handbill be distributed pertaining to that matter, the substance of which is that:

"It is possible that informational pickets from these striking plants may appear at other locations for the purpose of publicizing the dispute at those plants."

The pamphlet was to keep the members of other locals fully advised of that situation and these developments, and, prior to July 27, 1971, the president of Local 1798 did, in fact, distribute handbills containing this information to the local membership.

On or about seven or seven-thirty A. M., on July 27, after these handbills had been passed out and before the eight o'clock shift at the Memphis plant of General Cable, pickets appeared purporting to represent these other locals, including the 1164, 1256, and 1558 of the IBEW. These pickets carried signs purporting to show that they were informational pickets. None of the pickets were members of the Memphis Local, and none were Memphis General Cable Employees.

Almost immediately a meeting took place between the representatives of the Company and Local Union, including Messrs. Vandergriff, Huggins, and Edwards, being the president and certain other officers of the Local, regarding this situation. The Company advised the local union officials that there should be no work stoppage as that would constitute, in the Company's view, a violation of the collective bargaining agreement.

Mr. Vandergriff advised those local members assembled who would report for the eight o'clock shift of the "no strike" or "stoppage" provision of the agreement, and perhaps somewhat equivocally advised them to report to work. It is significant to note, however, that Mr. Vandergriff, himself, and no other Local 1798 members, actually crossed the line to go to work. What constituted a work stoppage ensued after officials of the union had been warned of disciplinary consequences which might take place, and which, in fact, did take place, in that a number of employees, including certain union officials, and including particularly Mr. Vandergriff, were subsequently discharged.

This Court had a hearing and issued a temporary restraining order on July 29, 1971, which restrained the participation or encouragement of a work stoppage, restrained picketing about the plaintiff's Memphis plant, and called for a hearing in connection with this matter, which is the basis upon which the Court has rendered its findings and will render its conclusions.

After the temporary restraining order was issued, meetings apparently took place between the company and union officials, or official, with regard to the possible selection of an arbitrator, submission to the arbitrator of the issues growing out of the picket line situation and ensuing work stoppage, and, also the subsequent disciplinary action by the Company.

The Court finds from all of the evidence that the local union did, in ef-

fect, participate or act in concert with, and through, its local officers in the work stoppage at the Memphis plant of the plaintiff Company. It was something more than mere voluntary action of individual members and employees in bringing about a cessation of the production at the plant. The Local did, in effect, sanction this asserted stoppage of work by its memberships, and the Court feels that the pertinent language in the Disneyland v. Operating Engineers case, 75 LRRM 2661 (October 7, 1970), is appropriate in this particular situation with regard to the language of the collective bargaining agreement itself.

Article I, Section 4 of that agreement provides:

"There shall be no stoppage of work either by strike or lockout because of any dispute over matters relating to provisions herein or during the time that any grievance or other matter is under arbitration as provided hereinafter. All such matters must be handled in the manner later provided in this Agreement."

And, again, Article II, deals with "Adjustment of Grievances":

"Section 1. Should any difference arise between the corporation and the union with respect to rates of pay, hours of work or other conditions of employment, the interpretation by either party of any of the provisions of this agreement, or as to whether or not any of the provisions hereof are being violated, the following shall be the procedure for adjustment." (and setting out the basis of such arbitration or adjustment proceedings.)

In the *Disneyland* case the Court cites the *Freuhauf Trailer* case, 22 LRRM 2398, 2399, as follows:

" 'If the union at the time it signed the contract wished to have reserved to it the right to pass through a picket line, it should have incorporated that express provision in the contract.'

The Court agrees with that statement.

I think a contrary conclusion would require the management to think of all of the reasons why employees might possibly strike and list them all at the risk of the possibility if it forgot a reason the union would be authorized to strike under the assumption of that reason."

The grievance before this Court is broader, in our opinion, than that of Local 1644, in the case of General Cable Corporation v. International Brotherhood of Electrical Workers, Local Union 1644, 331 F.Supp. 478, decided July 30, 1971, in the United States District Court for the District of Maryland. Here there is unquestionably a mandatory grievance and arbitration procedure. Since there is a difference arising between the parties with respect to the interpretation of the provision of the agreement, it should be made subject to required arbitration. The Court feels, therefore, that arbitration is a matter that should be encouraged. As stated by the Court in the Maryland case at p. 482:

"It is true that the parties disagree as to whether or not the * * * work stoppage violates the no strike clause (which we have alluded to) in the collective bargaining agreement. [However], Courts have held that the construction of a no strike clause may be arbitrable, depending upon the wording of the collective bargaining agreement, and the circumstances under which the dispute arises." (Citing Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); H. K. Porter Co., Inc., Connors Steel Division, West Virginia Works v. Local 37, United States Steelworkers, 400 F.2d 691 (4th Cir., 1968); See also United Engineering and Foundry Employees Association Independent Union v. United Engineering and Foundry Company, 389 F.2d 479 (3rd Cir., 1967) and Stroehmann Bros. Co.

v. Local 427, Confectionery Workers, 315 F.Supp. 647 (D.C.Pa., 1970).

■ All doubt should be resolved in favor of arbitration under the collective bargaining agreement. See United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) and the *Boys Markets* case, supra. In the United Steelworkers of America v. Warrior case, Justice Douglas states at p. 581, 80 S.Ct. at p. 1352 that:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective bargaining agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process.

\* \* \* \* \* \*

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

■ The Court, under the facts and circumstances here, cannot say that the arbitration clause is not in fact susceptible to an interpretation or that the interpretation of the no strike provision should come within that framework.

■ The grievance between the Company and the defendant Local arose prior to the work stoppage when the pickets appeared, and it appears, therefore, that this case comes within the narrow exception created by the rule in the *Boys Markets* case.

In this connection, the Court would note that we believe that the *Drake Bakeries* case draws a distinction between facts similar to those here, and the facts in the International Union United Auto Aircraft Workers v. Benton Harbor Malleable Industries case, 242 F.2d 536 (6th Cir., 1957). The Court is also mindful of the Simplex Wire and Cable Co. v. Local 2208 of IBEW, 314 F.Supp. 885 (D.C.N.H., 1970), and the *Ourisman* case, 77 LRMM 2085; however, the Court feels that the facts in those cases are distinguishable from those in the present situation.

The Court, at the same time, certainly feels that there has been displayed no bad faith on the part of the Local Union officers and the members in connection with this dispute, but that it is a good faith dispute which the Court feels has arisen within the framework of the agreement, and is subject to arbitration.

The Court, therefore, will continue at the present time in force and effect the temporary restraining order until the entry of a formal order pertaining to the fulfillment of the terms of the findings and conclusions which have been recited herein. The Court orders that the parties arbitrate the dispute relative to the no strike provision, and the matter of informational pickets appearing from another union, and the Court at the same time orders the reinstatement of all of the Local's officials and persons who have been discharged prior to this particular order of the Court pertaining to this dispute, such reinstatement being subject to whatever findings and whatever determination the arbitrator may make with regard to all of the circumstances of the dispute and the discharges growing out of the dispute.