**GENERAL CABLE CORPORATION, a New Jersey corporation**

v.

**The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 1644, AFL–CIO, et al.**

Civ. No. 71–770T.

United States District Court, D. Maryland.

July 30, 1971.

---

Lewis A. Noonberg and Piper & Marbury, Baltimore, Md., John D. O'Brien, Andrew M. Kramer and Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill. (Marvin M. Goldstein, New York City, of counsel), for plaintiff.

Laurence J. Cohen and Sherman, Dunn & Cohen, Washington, D. C., Bernard W. Rubenstein, Bernard P. Jeweler, and Edelman, Levin, Levy & Rubenstein, Baltimore, Md., for defendants.

THOMSEN, District Judge.

Plaintiff employer (the Company) seeks an injunction against defendants, IBEW Local Union 1644 (Local 1644) and its officers, restraining them and all those in active concert or participation with them from ordering, sanctioning, authorizing or participating in a strike at its Baltimore plant (known as the Clifton Conduit Company Division). The Company also seeks an order (a) requiring the officers of Local 1644 to direct their members employed at the Baltimore plant to return to work immediately, (b) requiring the Local and its officers to arbitrate the question whether the "no strike no lockout" provision in the present collective bargaining agreement between the Company and Local 1644 authorizes defendants, during the term of that agreement, to engage in such a concerted work stoppage as is alleged; and to comply with the terms of the award which may be handed down by the arbitrator.

Jurisdiction is claimed under section 301 of the LMRA, 29 U.S.C.A. § 185. Defendants rely on the Norris-LaGuardia Act, 29 U.S.C. § 104. The case turns on the proper interpretation of Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).[1]

There are two principal issues: (1) whether Local 1644 ordered, sanctioned or authorized the strike or concerted stoppage of work; and (2) whether the dispute is over a matter which the Company and Local 1644 are contractually bound to arbitrate.

A collective bargaining agreement between the Company and Local 1644, covering all hourly production and maintenance employees (43) at the Company's

---

1. On July 17, 1971, after a hearing, this Court granted a motion for temporary restraining order, enjoining all picketing, with the understanding that the order should not be deemed a decision on the merits of the issues raised. The Company, as a condition of the issuance of the order, agreed that it would take no disciplinary action and would rescind any disciplinary action already taken arising out of the work stoppage of July 15 and 16, 1971, pending resolution of the question whether employees who were disciplined as a result of such work stoppage acted in violation of Article III, Section 2, of the collective bargaining agreement. The parties cooperated in bringing the matter to trial on July 24, 1971.

Baltimore plant, is now, and at all times material herein was, in full force and effect.

IBEW Locals 868, 1164, 1256 and 1558 represent separate bargaining units of employees at the Company's plants located in Bayonne, Perth Amboy, New Brunswick, New Jersey and St. Louis, Missouri. All of those units were covered by separate collective bargaining agreements which expired on June 30, 1971. Negotiations for new contracts at each of those locations and for each of those bargaining units commenced prior to the expiration dates of said agreements. On or about July 1, 1971, all employees in those collective bargaining units became engaged in strikes which have continued to the present time.

On July 2, 1971, those four local unions sent a letter to all "General Cable Local Unions", including Local 1644, stating:

"This letter is being written on behalf of the undersigned Local Unions. As you are aware, negotiations have been taking place in New York City by the EM-4 National Negotiating Committee on behalf of these Local Unions.

"Enclosed you will find another report on these negotiations and the strike which started July 1st. There are sufficient copies of the report for you to hand bill all General Cable members in your Local Union. We suggest that all plants be handbilled on Wednesday, July 7, 1971. If this is not possible due to vacations or plant shutdown, your plant should be handbilled the first day it returns to work."

The handbill read as follows:

"Negotiations with General Cable, being conducted by System Council EM-4 on behalf of Local Unions 868, 1164, 1256 and 1558, reached an impasse on June 30, 1971. Local Unions representing 1700 of our brothers and sisters are presently on strike at Bayonne, New Jersey (L.U. 868); St. Louis, Missouri (L.U. 1256); Perth Amboy, New Jersey (L.U. 1164); New Brunswick, New Jersey (L.U. 1164); Perth Amboy, New Jersey (L.U. 1558).

"It is possible that informational pickets from these striking plants may appear at other locations for the purpose of publicizing the dispute at those plants.

"We want to keep you fully advised of these developments, since we all realize the importance of improving the wages and working conditions of all General Cable employees. Therefore, we ask for your support and cooperation to the fullest extent permitted by law."

The minutes of a meeting of Local 1644 held on July 11, 1971, contain the following statement:

"Communications: From the Brothers and Sisters of the Local Unions 868, 1164, 1256, 1558 in regards to negotiations that had been taken place in New York City by the EM-4 National Negotiating Committee. At this point Howard D. Jones stated local 1644 has a no strike clause in its agreement with the Company that states the union will not order sanction or authorize a strike or stoppage should any pickets appear at our plant. I want to make it clear to the members of our local" (sic)

Nevertheless, the President and officers of Local 1644 distributed the handbills to some of the members of Local 1644.

Commencing on July 15, 1971, at approximately 7 a. m. and at or about the time of each shift change on that day and the following day, two hourly employees employed by the Company at Bayonne, New Jersey, and members of Local 868 appeared at the employee entrance to the Company's Baltimore plant, carrying picket signs. These signs bore the legend "This is to inform the public that IBEW Locals 868, 1164, 1256, 1558 are on strike against General Cable Corporation".

A work stoppage commenced at approximately 7 a. m. on July 15, 1971, and continued until approximately noon

on July 17, 1971. During the period of the work stoppage the individual defendants who were employees of the Company at its Baltimore plant came to work, but did not cross the picket line and punch in.[2]

Some additional facts with respect to conversations between the plant manager, officers of Local 1644 and other employees have been stipulated. A number of witnesses were called by both sides. As is not uncommon in these cases, none of the testimony was entirely credible, for one reason or another. Based upon the stipulated facts and the weight of the credible evidence, the Court finds that, although some of the officers of the Union gave lip service to their view that the collective bargaining agreement required the employees to cross the picket line and go to work, none of the officers crossed the picket line and they encouraged the other employees not to cross the picket line.

The collective bargaining agreement contains the following provision:

"Article III—No Strikes or Lockouts

"Section 1. The Company on its part agrees not to cause, permit, or engage in any lockout of its employees.

"Section 2. During the life of this Agreement the Union will not order, sanction, or authorize a strike or other concerted stoppage, interruption or curtailment of work by its membership unless the Company declines promptly to submit a matter to arbitration, upon failure of the Company and the Union to adjust the matter in the other steps of the grievance procedure, in which case the authorization, sanctioning or ordering of the strike, or other concerted interruption, stoppage, or curtailment of production shall not be deemed a violation or breach of this Agreement."

Article XV, headed "Grievance Procedure," contains a procedure for the handling of grievances presented by the Union. Counsel for all parties are agreed that the collective bargaining agreement does not contemplate or provide for the presentation of grievances by the Company.

(1)

The Union contends that the refusal of the men to cross the picket lines was based upon their individual principles, that it was "entirely consistent with his right as an individual employee not to cross the picket line [3] and cannot be held, without more, to represent an official union authorization or sanctioning of the strike". This Court finds, however, based upon the facts set out above, that the Union sanctioned or authorized the strike or other concerted stoppage of work by its membership.

(2)

The foregoing finding, however, does not settle the matter; the Court must consider whether a federal court has jurisdiction to issue the requested injunction.

The Supreme Court has stated that arbitration is the preferred mechanism for resolving disputes under collective bargaining agreements.[4] Balancing that policy against the policy embodied in the Norris-LaGuardia Act, the Court in *Boys Markets* said:

"Our holding in the present case is a narrow one. We do not undermine

2. The President of Local 1644, the defendant Jones, was not an employee of the Company.

3. NLRB v. Union Carbide Corp., 440 F.2d 54 (4 Cir. 1971); Virginia Stage Lines, Inc. v. NLRB, 441 F.2d 499 (4 Cir. 1971).

4. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Local 174, Teamsters, Chauffeurs, Warehousemen, and Helpers v. Lucas Flour Co., 369 U.S. 95, 105, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* [Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440] suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles that we now adopt:

" 'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' 370 U.S., at 228, 82 S.Ct. at 1346. (Emphasis in original.)" 398 U.S. at 253, 254, 90 S.Ct. at 1594.

The Union contends that the strike is not "over a grievance which both parties are contractually bound to arbitrate". The Company contends that the question whether or not the Union and its members can honor the picket line of a sister local by engaging in a strike is a dispute which must be resolved through the grievance and arbitration procedure of the collective bargaining agreement.

It is true that the parties disagree as to whether or not the strike or work stoppage violates the no strike clause in the collective bargaining agreement. Courts have held that the construction of a no strike clause may be arbitrable, depending upon the wording of the collective bargaining agreement and the circumstances under which the dispute arises. See, Drake Bakeries, Inc., v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); H. K. Porter Co., etc. v. Local 37, United Steelworkers, 400 F.2d 691 (4 Cir. 1968).

Those cases do not apply here. In the present case the strike or work stoppage is not over a grievance which is subject to arbitration under the collective bargaining agreement. See, Simplex Wire & Cable Co. v. Local 2208, IBEW, 314 F.Supp. 885 (D.N.H.1970); Ourisman Chevrolet Co. v. Automotive Lodge (D. D.C.1971); see also U. S. Steel Corp. v. Mine Workers (3 Cir. 1970); cf. Disneyland v. Operating Engineers, 75 LRRM 2661, 2667 (Cal.Superior Ct.1970). The only grievance or dispute between the Company and Local 1644 is the result of the strike and not the cause of the strike. It does not come within the narrow exception created by the rule in *Boys Market* to the applicability of the Norris-LaGuardia Act.

If the Company discharges or otherwise disciplines the members of Local 1644 who refused to cross the picket line on July 15 and 16, the Union can file a grievance and that grievance will be subject to arbitration under the collective bargaining agreement. It is, therefore, inappropriate for this Court to intimate an opinion as to the motives of the Union and its individual members, or on the question whether the strike or refusal to work was a breach of the no strike clause in the collective bargaining agreement.