**BARNARD COLLEGE IN the CITY OF NEW YORK, Plaintiff,**

v.

**TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO, an unincorporated association, et al., Defendants.**

**No. 74 Civil 450.**

United States District Court,
S. D. New York.

Feb. 4, 1974.

Putney, Twombly, Hall & Hirson, New York City, for plaintiff; Joseph R. Parauda, New York City, of counsel.

O'Donnell & Schwartz, New York City, for defendants; Michael Klein, New York City, of counsel.

EDWARD WEINFELD, District Judge.

The plaintiff, as employer, and the defendant union are parties to a collective bargaining agreement which covers the guards and the buildings, grounds and residence halls maintenance employees of Barnard College. The agreement covers approximately eighty-seven employees on three separate shifts. The guards provide safety and security to the property and persons of those in and about the college and the college grounds. The other employees serve to maintain and care for the physical properties of the college, including cleaning and servicing of sanitary facilities at the university

and in the residence halls, where approximately 1100 students reside.

The contract between the parties includes a no-lockout, no-strike provision. Specifically, section 28 provides in part:

"In view of the mutual acceptance of this Agreement, both parties agree to settle all differences as provided for in Section 15. During the term of this Agreement, Barnard College will not resort to any form of 'lock out' and the Union will not call or countenance any form of strike or picketing.

"In the event of an unauthorized strike by the employees, the Union will do its utmost to prevent guards from leaving their jobs, and if guards do not continue to carry out their duties the Union will as expeditiously as possible, endeavor to replace them with substitutes."

Section 15 provides a four-step procedure for the disposition of "any dispute or grievance arising under this contract" with a presumption of settlement under the last step, unless:

"[T]he Union serves notice in writing on the Treasurer and Controller or his designated representative that it elects to submit the grievance to arbitration [as provided therein].

.    .    .    .    .    .    .

."The decision of this arbitration . . . shall be final and binding upon both parties."

Section 14(a) provides "[g]rievances shall be deemed to consist only of disputes arising out of the interpretation or application of this Agreement."

On January 28, 1974, 96% of the defendant union employees failed to report for work. The union acknowledges that there is no controversy between it and the plaintiff. The sole reason for the failure of the employees to report to work and to live up to the agreement is that another union is engaged in picketing the college and the defendant union members refuse to cross the picket line. The union resists the plaintiff's claim to injunctive relief solely on the ground that the refusal of its members to cross the picket line is not a "dispute or grievance arising under this contract" that is subject to arbitration, which plaintiff has demanded and the defendant union has refused. The union contends this case does not come within the narrow exception to the anti-injunction provisions of the Norris-LaGuardia Act set forth in Boys Markets, Inc. v. Retail Clerks Local 770.[1]

■■ Essentially, the parties differ as to whether section 28 of the collective bargaining agreement, the no-strike clause, is applicable where the union members fail to report to work because of refusal to cross a picket line of another union; plaintiff contends that it is applicable; defendants, that it is not. It is the union's further position that this dispute over the scope of the no-strike provision in section 28 is not a "difference," within the meaning of section 28—that it is not arbitrable. There is, however, a strong federal policy in favor of the arbitration of labor disputes, and "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[2] Here, the terms of the no-strike provision are all encompassing and without limitation. The parties mutually agreed "to settle all differences as provided for in section 15," which contains the arbitration machinery. Emphasis is given to the comprehensive scope of section 28 by its additional provision whereby the union agreed that it would "not call or countenance any form of strike" "[d]uring the term of this

1. 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

2. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

agreement." This commitment is further underscored by the affirmative duty of the union "in the event of an unauthorized strike by the employees, [to] do its utmost to prevent guards from leaving their jobs." In light of the foregoing language, it cannot be said "with positive assurance" that this dispute over the scope of the no-strike clause is not covered by section 15; indeed, the terms of the collective bargaining agreement emphasize that *"all differences"* between the parties—with no exception—are subject to arbitration. Furthermore, the "difference" between the parties, as to whether the no-strike provision is applicable in instances where the employees refuse to cross the picket line of another union, is a dispute "arising out of the interpretation or application" of the agreement and is thus a grievance subject to the provisions of section 15.[3]

*Boys Markets* sets forth criteria for determining whether an injunction should issue against a striking union.[4] Following those guidelines, this court finds that the collective bargaining agreement in the instant case contains a mandatory grievance adjustment or arbitration procedure, and that, as indicated above, the dispute is one that both parties are contractually bound to arbitrate. Further, plaintiff has shown irreparable injury in view of the continued danger to lives and property and the interference with the normal functioning of college activities created by the defendant union members' refusal to cross the picket lines.

The motion is granted to the extent of directing the defendants to comply with the provisions of the arbitration procedure, and pending such compliance and determination of the dispute by the arbitrators, the defendants are enjoined from violating the no-strike provision of section 28.

3. *See* Monongahela Power Co. v. Local No. 2332, Electrical Workers, 484 F.2d 1209 (4th Cir. 1973). *But see* Amstar Corp. v.

Amalgamated Meat Cutters, 468 F.2d 1372 (5th Cir. 1972).

4. 398 U.S. at 254, 90 S.Ct. 1583.