**BUFFALO FORGE COMPANY,**
**Plaintiff,**

v.

**UNITED STEELWORKERS OF**
**AMERICA, AFL–CIO, et al.,**
**Defendants.**

**Civ. No. 74–546.**

United States District Court,
W. D. New York.

Dec. 13, 1974.

Flaherty, Cohen, Grande & Randazzo, P. C., Buffalo, N. Y. (Jeremy V. Cohen, Buffalo, N. Y., of counsel), for plaintiff.

McMahon & Crotty, Buffalo, N. Y. (Thomas P. McMahon, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

This is an action brought by the Buffalo Forge Company under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), for a temporary restraining order and a preliminary and permanent injunction against the defendants, the United Steelworkers of America, AFL–CIO [International Union], Local Union No. 1874 and Local Union No. 3732, who are engaged in a work stoppage against the plaintiff. The summons and complaint in this action were filed and served on November 26, 1974. On the same day, pursuant to prior arrangement, counsel for plaintiff and defendants conferred with the court concerning plaintiff's application for a temporary restraining order. Because the papers were incomplete, counsel returned again on November 27. On that day the court directed plaintiff's counsel to submit further supporting affidavits, with copies to defendants' counsel, on Friday, November 29, and adjourned argument on plaintiff's request for a temporary restraining order until December 2, 1974 at 2:00 p. m. Counsel appeared as directed on December 2, 1974 and, after hearing argument, the court denied plaintiff's application for a temporary restraining order and directed counsel to appear for a hearing, with witnesses, on December 3, 1974 at 2:00 p. m. concerning plaintiff's application for a preliminary injunction. From this hearing and from the affidavits submitted by the parties, the court makes the following findings of fact.

Plaintiff is a corporation engaged in the manufacture and sale of pumps and air handling equipment at three separate plants and office facilities in the Buffalo, New York area: 490 Broadway, Buffalo, New York; Duke Road, Cheektowaga, New York; and Oliver Street, North Tonawanda, New York. Defendants' counsel has conceded that the court has jurisdiction of this matter pursuant to Section 301 of the Labor Management Relations Act.

For many years defendant International Union and defendant Locals 1874 and 3732 have represented plaintiff's production and maintenance employees under successive collective bargaining contracts. The current contract, by its terms, remains in full force and effect until September 28, 1975. There are actually two production and maintenance bargaining units, one represented by defendant International Union and Local 1874, covering approximately 930 employees at the Broadway and Duke Road plants, and the other represented by defendant International Union and Local 3732, covering approximately 83 employees at the Oliver Street plant.

Defendant International Union and two other affiliated Local Unions represent plaintiff's office, clerical and technical employees who are employed at the Broadway, Duke Road and Oliver Street facilities. Plaintiff and defendant International Union and these sister Locals (Locals No. 8267 and No. 8269) [sometimes hereinafter referred to as the Office Technical Unions] have been negotiating for several months on the first collective bargaining agreement covering plaintiff's office, clerical and technical employees. On Saturday, November 16, 1974, defendant International Union and the Office Technical Locals struck plaintiff and established picket lines at all of the plaintiff's Buffalo area facilities. This strike and picketing are continuing to date.

On Monday, November 18, 1974, Local 3732 engaged in a one-day work stoppage at the Oliver Street plant and refused to cross the Office and Techni-

cal Local's picket lines there. The next day Local 3732 returned to work and worked as scheduled until midmorning on Thursday, November 21. On that morning, at the direction and instruction of defendant International Union, Local 1874 and its members commenced a work stoppage at the Broadway and Duke Road plants, which has continued to date. Later the same morning, Local 3732 and its members walked off their jobs at the Oliver Street plant in North Tonawanda and, since that time, have refused to cross the picket lines established by the Office Technical Locals. Manufacturing operations at plaintiff's three plants have been completely halted.

The collective bargaining agreements in force between the plaintiff and defendants contain a no-strike clause and a mandatory procedure for the adjustment of grievances. The no-strike clause, Section 14b, provides in part:

> There shall be no strikes, work stoppages or interruption or impeding of work. No Officers or representatives of the Union shall authorize, instigate, aid or condone any such activities. No employee shall participate in any such activity.

The adjustment of grievances, Section 26, provides in part:

> Should differences arise between the Company and any employee covered by this Agreement as to the meaning and application of the provisions of this Agreement, or should any trouble of any kind arise in the plant, there shall be no suspension of work on account of such differences,
>
> . . . .

Plaintiff contends that the no-strike clause prohibits the defendant Unions from refusing to cross the Office Technical Unions' picket lines because the differences between plaintiff and defendants must be submitted to the mandatory grievance and arbitration procedures set forth in the agreement. In the alternative, plaintiff argues that the work stoppage is the result of an incident which occurred on November 18,

1974 when one of plaintiff's supervisors ordered a plant truck driver, who is a member of one of the defendant Locals, to drive a non-Company owned tractor-trailer through the Office Technical Unions' picket lines. Both parties agree that if this work assignment resulted in a dispute between the parties and caused the walkout of defendant Locals, this dispute would be subject to the mandatory grievance procedures spelled out in the agreement, and that plaintiff would be entitled to the requested injunctive relief. For this reason, the court will first decide whether this incident was the cause of the work stoppage.

Plaintiff's position regarding this incident is principally set out in the affidavit and testimony of Robert E. Pfeil, Assistant Personnel Manager at Buffalo Forge. He related that on Monday, November 18, 1974, Valentine Zizzi and Valentine Olejniczak, President and Vice President, respectively, of Local 1874, complained to him about the order of the Company directing members of their Local to drive other companies' trucks through the picket lines. Mr. Pfeil said he was not acquainted with this problem and would look into it. According to Mr. Pfeil, they met again on November 19, 1974. (The parties agree that the next meeting occurred on November 20 and not on the 19th.) His testimony at the hearing was similar to the information set forth in his affidavit, which was as follows:

> Mr. Olejniczak said they did not object to our drivers positioning the vans or trailers for loading or unloading once the van was on company premises. I told Mr. Olejniczak and Mr. Zizzi that to the extent the company had assigned its truck drivers in the past to do what they were now complaining about, that the company would continue to make those assignments. I also said that our truck drivers would not drive another company tractor trailer into or out of the company's yard, but that we would probably continue to have our drivers hook up to another company's trailer with a Buffalo Forge Company tractor and drive the trailer into or out of the company premises. Neither Mr. Zizzi or Mr. Olejniczak seemed particularly pleased with my answer to their complaint but they left my office. I have had no conversation with them or they with me on this subject since.

Mr. Zizzi and Mr. Olejniczak agreed in substance with the recollection of Mr. Pfeil about the meetings, but state that when they left Mr. Pfeil's office, the problem was resolved to their satisfaction.

In support of the argument that the work stoppage was due to the order given to the truck drivers, the plaintiff called Anthony F. Kubacki, Lawrence Small and Elvin B. Morton, supervisory personnel. These men were present at the entrance to the plaintiff's Broadway plant on the morning of November 21, 1974, which was the first day of the work stoppage. Mr. Kubacki recalls that while in the presence of Mr. Small and Mr. Morton, he met with Mr. Olejniczak, who said that the reason why the Union would not come to work was because of the truck driver problem. Mr. Olejniczak denies making this statement to Mr. Kubacki. Mr. Small and Mr. Morton do not support the testimony of Mr. Kubacki about this conversation. Mr. Small recalls that he heard "someone" say "something" about a truck driver problem, and Mr. Morton recalls only that he heard Mr. Olejniczak say "truck driver" and "problem" but heard nothing else. Mr. Kubacki and Mr. Morton made written reports of this meeting, which were not produced at the hearing.

Mr. Small testified that on November 27, 1974 Stanley Grey, a member of the grievance committee, told him that the problem was over the truck drivers' dispute. At the hearing Mr. Grey denied making this statement. There is no other evidence to support Mr. Small's recollection of this event.

■ The contention of defendants that the work stoppage was not precipitated by the truck driver incident is con-

firmed by an event which occurred late on November 20. On that afternoon Derrell Stewart, Vice President of Buffalo Forge, learned that a work stoppage was planned for the following morning. He sent telegrams to officers of the Local Unions and the International Union setting forth the plaintiff's position that a work stoppage would be in violation of the agreement. In addition, he called into his office Mr. Marvin Pawlowski, an officer of the Local, and read the telegram to him. Mr. Pawlowski told Mr. Stewart that he had heard nothing of any planned walkout and that it was a complete surprise to him. If the cause of the work stoppage was the dispute about the truck drivers, it appears to the court that Mr. Pawlowski would have been aware of it and aware of the planned work stoppage. The plaintiff has not produced evidence sufficient to support its argument that the ordered movement of tractor-trailers through the picket line was the cause of the dispute.

The evidence supports defendants' position that the work stoppage came about because of the direction of the International Union to members of the defendant Locals to respect the picket lines of the Office Technical Union. This direction from the International Union was made at a meeting held with officers of the Local Unions on Wednesday, November 20, 1974 at about 11:30 a. m. It should be noted that the members of the defendant Unions have not engaged in the picketing which is being carried on by the members of the Office Technical Locals. Certain members of the defendant Locals have crossed the picket lines and gone to work.

The more essential questions in this case are whether the work stoppage by Locals 1874 and 3732 is a violation of the no-strike clause contained in the collective bargaining agreement, and whether the defendants are subject to the mandatory adjustment and grievance procedures of the agreement. In a suit brought pursuant to Section 301, before a federal court can enjoin a strike or walkout, the court must find (1) that the strike is in breach of a no-strike obligation under an effective agreement; (2) that the strike is over an arbitrable grievance, and (3) that both parties are contractually bound to arbitrate the underlying grievance which caused the strike. Boys Markets v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1969); Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S. Ct. 1328, 8 L.Ed.2d 440 (1961) (dissenting opinion), and Amstar Corp. v. Amalgamated Meat Cutters & Butcher Workmen of North America, 468 F.2d 1372 (5th Cir. 1972). In *Boys Markets* the Supreme Court adopted the principles set forth in the dissenting opinion in *Sinclair* to determine when an injunction could issue:

A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. 370 U.S., at 228, 82 S.Ct. at 1346. (Emphasis in original.)

The *Boys Markets* standards do not apply to this case because there is no arbitrable grievance between the parties.

The dispute here is between the plaintiff and the striking members of the Office Technical Workers Local. That strike preceded and precipitated the work stoppage of the defendant Locals. This court agrees with the reasoning of the Court of Appeals for the Fifth Circuit in *Amstar, supra,* which said:

. . . The strike by the Chalmette employees was not "over a grievance" which the parties were contractually bound to arbitrate. Rather, the strike itself precipitated the dispute—the validity under the Union's no-strike obligation of the member-employees honoring the ILA picket line. Were we to hold that the legality of the very strike sought to be enjoined in the present situation constituted a sufficiently arbitrable underlying dispute for a *Boys Markets* injunction to issue, it is difficult to conceive of any strike which could not be so enjoined. The *Boys Markets* holding was a "narrow one," not intended to undermine the vitality of the anti-injunction provision of the Norris-LaGuardia Act. Indeed, the Supreme Court specifically stated that its decision did not mean "that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance." 468 F.2d at 1373.

The court has carefully considered the cases cited by plaintiff but, in almost every instance, these cases are distinguishable from the one before the court. In Inland Steel Co. v. Local Union 1545, United Mine Workers, 505 F. 2d 293 (7th Cir. 1974), in addition to the no-strike clause and mandatory grievance procedure, the contract provided that "matters not specifically mentioned" in the agreement were covered by the grievance procedure. The cases of NAPA Pittsburgh, Inc. v. Automotive Local No. 926, 502 F.2d 321 (3d Cir. 1974), and Wilmington Shipping Co. v. Longshoremen, Civ. No. 73–2354 (4th Cir. June 19, 1974), cert. denied, November 18, 1974, also involved agreements with additional provisions. *NAPA* dealt with a clause in the collective bargaining agreement between the parties that covered the union's honoring a primary strike against the employer, and *Wilmington* dealt with a clause providing for the union's honoring a "bona fide" picket line. In the instant case, no such additional language appears. Although the cases of Monongahela Power Co. v. Local No. 2332 IBEW, 484 F.2d 1209 (4th Cir. 1973), and Barnard College v. Transport Workers, 372 F.Supp. 211 (S.D.N.Y.1974), dealt with agreements which contained no additional language and appear to support plaintiff's position, nevertheless, the court finds that the cases cited by the defendants are controlling. *Amstar, supra*; Simplex Wire and Cable Co. v. Local 2208 of International Brotherhood of Electrical Workers, 314 F.Supp. 885 (D. C.N.H.1970); General Cable Corp. v. International Brotherhood of Electrical Workers, 331 F.Supp. 478 (D.C.Md. 1971). As in the instant case, in all of these cases there was no contractual provision found restricting the union's right to honor picket lines of other labor organizations. Therefore, from the foregoing findings of fact and conclusions of law, plaintiff's application for a preliminary injunction is hereby denied.

So ordered.