**STOKELY–VAN CAMP, INC.,**
Plaintiff,

v.

**Troy THACKER and Cannery Warehouse-men, Food Processors, Drivers and Helpers, Local No. 788, Defendants.**

**STOKELY–VAN CAMP, INC.,**
Plaintiff,

v.

**Don JOHNSON and General Teamsters Union Local No. 411, Defendants (two cases).**

Civ. Nos. C75–266S to 75–268S.

United States District Court,
W. D. Washington.

April 24, 1975.

Thomas A. Lemly, Seattle, Wash., for plaintiff.

Lawrence R. Schwerin, Seattle, Wash., for defendants in No. C75–266S.

Albert M. Franco, Seattle, Wash., for defendants in Nos. C75–267S and 268S.

## MEMORANDUM OF DECISION

BEEKS, Senior District Judge.

Plaintiff Stokely-Van Camp, Inc. ("Employer") moves the Court to grant temporary restraining orders enjoining defendant unions from continuing work stoppages now underway at Employer's plants and facilities at Mt. Vernon and Burlington, Washington.[1] Employer's motions necessitate a determination of the breadth of the exception that Boys Markets, Inc. v. Retail Clerks Local 770 [2] has carved from the anti-injunction provisions of the Norris-LaGuardia Act.[3]

The situation out of which the present litigation arises may be described as follows. Employer operates plants and facilities throughout the United States and enters into collective bargaining agreements with local unions at its several locations. At one such location, said to be in Idaho or Oregon, Employer is involved in a labor dispute with a union, not a party herein, known as Local 670. Local 670 has picketed Employer's facilities at Mt. Vernon and Burlington. Defendants, Locals 788 and 411 have "sanctioned" the activities of Local 670, and members of the defendant unions have chosen to honor Local 670's picket lines.

Employer charges that the resulting work stoppages at its Mt. Vernon and Burlington facilities are in violation of the no-strike provisions and the grievance and arbitration procedures set forth in its collective bargaining agreements with the defendant locals. It is further alleged that perpetuation of the work stoppages will result in immediate and irreparable harm to Employer. Accordingly, Employer asserts that its necessary and proper remedy is the issuance by this Court of temporary restraining orders against defendants.

Our initial inquiry must seek to align the factual situations presented herein with the legal framework that has developed since the uneasy confluence of Boys Markets and Norris-LaGuardia. Norris-LaGuardia ousts the federal courts of jurisdiction to issue injunctions or restraining orders in cases arising out of labor disputes, and specifically proscribes enjoining work stoppages.[4] In Boys Markets, however, the Supreme Court sought to reconcile Norris-LaGuardia with the subsequently enacted Section 301(a) of the Labor Management Relations Act, 1947,[5] and with the growing preeminence of the arbitration remedy in labor disputes.[6] Accordingly,

---

1. The work stoppage sought to be enjoined in Case No. C75–266S is underway at Employer's plant at Mt. Vernon, Washington: Case No. C75–267S relates to a work stoppage at Employer's Burlington Fleet Truck Stop at Burlington, Washington: Case No. C75–268S relates to a work stoppage at Employer's Skagit Warehouse at Mt. Vernon, Washington.

2. 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

3. 29 U.S.C. §§ 101–15 (1970). Section 104 provides in part:

   "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute * * * from doing, whether singly or in concert, any of the following acts:

   "(a) Ceasing or refusing to perform any work or to remain in any relation of employment."

4. Id.

5. 29 U.S.C. § 185(a):

   "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

6. See, e. g., Steelworkers' Trilogy—United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

in *Boys Markets* the Court renounced its earlier position[7] and held that Norris-LaGuardia does not bar the enjoining of work stoppages that are in violation of collective bargaining agreements containing no-strike and arbitration provisions. The Court stressed congressional policy in favor of peaceful resolution of labor disputes, a policy furthered by judicial encouragement of arbitration. It was reasoned that grievance and arbitration provisions are a *quid pro quo* of the no-strike clause, and employers would be discouraged from contracting for arbitration procedures if no-strike clauses were rendered unenforceable by denial of injunctive relief. A thorough analysis of competing considerations led the Court to vindicate congressional policy favoring voluntary establishment of a mechanism for peaceful resolution of labor disputes, and it was concluded that "the core purpose of the Norris-La-Guardia Act is not sacrificed by the limited use of equitable remedies to further this important policy * * *."[8]

The Court was careful, however, to limit its holding.[9] Setting forth principles for the guidance of district courts faced with the question of whether to grant injunctive relief under § 301(a),[10] the Court proscribed the issuance of such relief "unless and until [the district court] decides that the case is one in which an injunction would be appropriate *despite* the Norris-LaGuardia Act."[11] Additionally,

"* * * [w]hen a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive

order until it first holds that the contract *does* have that effect * * *."[12]

Application of the holding of *Boys Markets* to the cases at bar must therefore begin with an examination of the effect of the collective bargaining agreements. In C75–266S, the collective bargaining agreement between Employer and Local 788 provides:

"6.1 Should any difference arise between the Company and the Union or any employee or group of employees pertaining to the application or interpretation of the terms and conditions of this Agreement, it shall be settled in accordance with the following procedure * * *."

There follows a detailed five-step procedure ending with binding arbitration. The agreement also includes a no-strike clause:

"ARTICLE VII—NO STRIKE, NO LOCKOUT

"7.1 Except as provided in Section 7.3, there will be no strikes, work stoppages, picket lines, slow-downs, secondary boycotts, or other concerted activity by the employees, and there will be no lockouts by the Company for the duration of this Agreement. The Union guarantees to support the Company fully in maintaining operations."

\* \* \* \* \* \*

"7.3 It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action, in the event an employee refuses to cross a primary picket line sanctioned by the Local Union. This right does not extend to a secondary picket

---

7. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

8. 398 U.S. at 253, 90 S.Ct. at 1594.

9. "Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what

we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance."
398 U.S. at 253–254, 90 S.Ct. at 1594.

10. *Supra* note 5.

11. 398 U.S. at 254, 90 S.Ct. at 1594 (emphasis added).

12. *Id.* (emphasis in original).

line or a primary picket line not sanctioned by the Local Union."

Clearly, in light of paragraph 7.3, the work stoppage in C75–266S is not in violation of paragraph 7.1 if the picket line of Local 670 is primary. If, on the other hand, the Local 670 picketing is secondary, then the refusal of members of Local 788 to cross the picket line is a violation of the collective bargaining agreement. However, for purposes of ruling on the motion now before the Court, it need not be decided whether the picketing of Local 670 is primary or secondary. It need not even be decided whether this primary-secondary dispute is arbitrable under the agreement: for present purposes it will be presumed that it is.[13] Consider, however, the admonition of *Boys Markets* that "injunctive relief is [not] appropriate as a matter of course in every case of a strike over an arbitrable grievance."[14]

In *Boys Markets* the strike resulted from a dispute over which tasks in the employer's store were required to be performed by union members. This was a dispute such as the agreement provided would be settled by arbitration. The employees' strike was designed to force capitulation by the employer on an arbitrable issue: it thus ousted the arbitrator of authority and subverted the arbitration process. The present case is clearly different, in that Local 788's work stoppage is not designed to force settlement of an arbitrable issue before Employer can present its side to an arbitrator. The work stoppage, therefore, is not the *result* of an arbitrable dispute; rather, the stoppage itself is a subject for arbitration. Accordingly, the work stoppage is not "over" an arbitrable issue so as to bring this case within the exception to Norris-LaGuardia that is delineated in *Boys Markets*.[15]

It must be noted that the purposes of arbitration are not subverted in this situation if the temporary restraining order is denied. Arbitration can proceed either during the stoppage, or afterward in the context of Employer's attempt to recover damages for the allegedly illegal union action. Further, the collective bargaining agreement gives Local 788 the right to sanction primary picket lines, and upholds the right of union members to refuse to cross such lines.[16] Local 788 never agreed to cross all picket lines pending arbitration of primary-secondary disputes arising under paragraph 7.3. Unlike *Boys Markets*, wherein the strike was patently violative of the collective bargaining agreement, this case presents a situation of at least arguably legal union activity. Thus,

---

13. Whether the picket line of Local 670 is primary or secondary, and hence, whether Local 788 is entitled to honor it appears to be a "difference * * * pertaining to the application or interpretation of the terms and conditions of [the collective bargaining agreement]," and thus an arbitrable dispute. Further, the Supreme Court has laid down a presumption of arbitrability:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

Gateway Coal Co. v. United Mine Workers, 414 U.S. 368 at 377–78, 94 S.Ct. 629, at 637, 38 L.Ed.2d 583 (1974).

14. *Supra* note 9.

15. *See*, text accompanying note 12, *supra*. *See also*, NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, 502 F.2d 321, 330–31 (3rd Cir. 1974) (Hunter, J., dissenting), cert. denied, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974), reh. denied, 419 U.S. 1117, 95 S.Ct. 798, 42 L.Ed.2d 816 (1975); Amstar Corp. v. Amalgamated Meat Cutters, 468 F.2d 1372 (5th Cir. 1972); Buffalo Forge Co. v. United Steelworkers of America, 386 F.Supp. 405 (W.D.N.Y.1974); General Cable Corp. v. Electrical Workers Local 1644, 331 F.Supp. 478 (D.Md.1971); Simplex Wire & Cable Co. v. Electrical Workers Local 2208, 314 F.Supp. 885 (D.N. H.1970). *But see*, Island Creek Coal Co. v. United Mine Workers, 507 F.2d 650 (3rd Cir. 1975); NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, *supra*; Monongahela Power Co. v. Electrical Workers Local 2332, 484 F.2d 1209 (4th Cir. 1973).

16. *See*, paragraph 7.3, quoted in text *supra* at p. 717.

granting a temporary restraining order herein would not enforce a promise clearly entered into by the union: rather, by requiring Local 788 to proceed to arbitration before honoring what it believes to be a primary line, this Court would impose upon the union an additional obligation not contracted for, one that would undermine the union's contractual position.[17]

Accordingly, I am of the view that C75–266S does not pose a situation that justifies application of the *Boys Markets* exception to Norris-LaGuardia. Employer's motion for a temporary restraining order is therefore denied.

Case C75–267S presents a similar situation, but turns upon construction of a differently worded collective bargaining agreement. The grievance procedure provided for is similar to that in C75–266S:

"Should any difference arise between the Company and the Union or any employee or group of employees pertaining to the application or the interpretation of the terms and conditions of this Agreement, it shall be settled in accordance with the following procedure * * *."

There follows a detailed four-step procedure culminating in binding arbitration. The agreement also includes a no-strike clause:

"ARTICLE IV—NO STRIKE—NO LOCKOUT

"4.1 There will be no strikes, work stoppages, slow-downs, or other concerted activities by the employees, and there will be no lockouts by the Company for the duration of this Agreement."

The no-strike clause is modified by the following article to the agreement:

"ARTICLE V—PROTECTION OF RIGHTS

"5.1 It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, in the event an employee:

"(a) Refuses to go through or work behind a picket line including picket lines of the Union party to this Agreement at the property of the Company located at Burlington, Washington, *where employees of Burlington, Washington Plant or Facility of Stokely-Van Camp, Inc., are engaged in a lawful and primary labor dispute sanctioned or approved by any Union legally representing that plant's employees.*

"(b) Refuses to go through or work behind a picket line including picket lines of the Union party to this Agreement at any other plant or facility of the Company where employees of that plant or facility are engaged in a lawful and primary labor dispute sanctioned or approved by any Union legally representing any portion of that plant's or facility's employees."

[Emphasis added].

The italicized language of paragraph 5.1(a) clearly limits the right of members of Local 411 to honor picket lines at the Burlington facility to those instances where Employer's Burlington workers are engaged in a lawful, *primary,* and sanctioned labor dispute. The only primary labor dispute present in this case involves an outside union, Local 670. There is thus no cause for arbitration, as there was in C75–266S, on the primary or secondary nature of the picketing by Local 670 at Employer's Washington locations.

C75–267S thus more closely approaches the *Boys Markets* situation. A temporary restraining order here would compel Local 411 to honor the promise it made in the collective bargaining agreement. It would not, as was the case in C75–266S, impose an additional obligation, one not contracted for, on the union. There is no arguable legality to Local 411's actions: the work stoppage

17. *See,* Recent Cases, NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, 502 F. 2d 321 (3rd Cir. 1974) (en banc), 88 Harv. L.Rev. 463, 467 (1974).

clearly violates the collective bargaining agreement.

■ As in C75–266S, the work stoppage in C75–267S is not designed to coerce Employer to capitulate on an arbitrable issue. In that sense the work stoppage is not "over" an arbitrable dispute: rather, as in 266S, it is itself a subject for arbitration.[18] Nonetheless, the illegality of Local 411's actions under the collective bargaining agreement is the overriding factor, in my view, that brings C75–267S within the scope of *Boys Markets*.[19]

Having found that *Boys Markets* removes Norris-LaGuardia as a bar to injunctive relief in C75–267S, it must now be determined whether a temporary restraining order is appropriate under traditional principles of equity.[20] I find that an illegal work stoppage is occurring and will continue; that, on the basis of the affidavit before me, the work stoppage, if allowed to continue, will result in immediate and irreparable harm to Employer; and that Employer will suffer more from denial of injunctive relief than will the union from its issuance.

Accordingly, Employer's motion for a temporary restraining order in C75–267S is granted.

Of the three cases presented, C75–268S is perhaps the most easily resolved. The collective bargaining agreement in that case, which contains a no-strike clause and grievance and arbitration provisions (but lacks a specific provision as to the rights of employees to honor picket lines), expired on March 31, 1975.

A new agreement has been negotiated, has been ratified by the union membership, but has not yet been executed by the parties. Defendant contends that some aspects of the no-strike provisions are still subject to negotiation. Further, the union argues that, having notified Employer of its intent to renegotiate various elements of the previous agreement, including the no-strike clause, the previous agreement is without binding effect beyond its expiration date. Employer contends that there is in effect a collective bargaining agreement, that a new agreement has been negotiated and ratified. Yet only the expired agreement has been provided to the court; the terms of any new agreement are undisclosed. The possible existence of a valid collective bargaining agreement is a matter that must abide further testimony. I cannot, on the basis of the material before me, infer the existence of a valid collective bargaining agreement.

■ Without a conclusive showing of the existence of an effective collective bargaining agreement, the *Boys Markets* requirements of a no-strike clause and an arbitration procedure are not met. Accordingly, the anti-injunction provisions of Norris-LaGuardia are dispositive of this motion. Employer's motion for a temporary restraining order in C75–268S must therefore be denied.

The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. Rules 52(a) and 65(d). A temporary restraining order in C75–267S will issue forthwith.

18. *See*, text accompanying note 15, *supra*.

19. For a novel approach to reconciling the *Boys Markets* requirement of a strike "over" an arbitrable dispute, with a factual situation similar to the present case, *see*, Is-

land Creek Coal Co. v. United Mine Workers, 507 F.2d 650 (3rd Cir. 1975).

20. Boys Markets v. Retail Clerks Local 770, 398 U.S. at 254, 90 S.Ct. 1583.