**BUFFALO FORGE COMPANY,**
**Plaintiff-Appellant,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, et al.,**
**Defendants-Appellees.**

**No. 829, Docket 74–2698.**

United States Court of Appeals, Second Circuit.

Argued April 15, 1975.

Decided May 1, 1975.

Certiorari Granted Oct. 20, 1975.
See 96 S.Ct. 214.

Jeremy V. Cohen, Flaherty, Cohen, Grande & Randazzo, P. C., Buffalo, N. Y., for appellant.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., for appellees; Carl B. Frankel, Pittsburgh, Pa., Bernard Kleiman, Kleiman, Cornfield & Feldman, Chicago, Ill., Thomas P. McMahon, McMahon & Crotty, Buffalo, N. Y., George H. Cohen, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., of counsel.

Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal raises a narrow but significant question of labor law of first impression in this court: If a union enters into a collective bargaining agreement establishing a mandatory arbitration procedure and including a no-strike clause and then later strikes *solely* out of deference to another union's lawful picket line at a place of employment common to the two unions, does a federal district court have authority under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a),[1] to enjoin the strike or is it precluded from granting injunctive relief by § 4 of the Norris-LaGuardia Act of 1932, 29 U.S.C. § 104?[2] Reso-

---

**1.** § 185. *Suits by and against labor organizations—Venue, amount, and citizenship*

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**2.** § 104. *Enumeration of specific acts not subject to restraining orders or injunctions*

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such under-

taking or promise as is described in section 103 of this title;

(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

lution of this issue requires interpretation of Boys Market, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), where the Supreme Court set forth a general standard for reconciling the competing demands of the two statutory provisions in the context of a strike over a grievance which the parties are bound by agreement to submit to arbitration. In the case before us, the United States District Court for the Western District of New York, John T. Curtin, *Chief Judge*, determined that under *Boys Market* it was deprived of jurisdiction by § 4 of the Norris-LaGuardia Act to issue a preliminary injunction sought by Buffalo Forge Company against the work stoppage generated by the defendant unions' order to its members to observe other employees' lawful picket line; the unions' obligations under the preexisting collective bargaining agreements to resolve disputes with management through a mandatory six-step settlement procedure culminating in arbitration and to refrain from authorizing strikes were deemed not controlling in light of Congress' stated antipathy to injunctions in § 4. 386 F.Supp. 405 (1974). After reviewing the divergent authority on the issue presented by this case,[3] we are convinced that Chief Judge Curtin has cor-

rectly construed the import of *Boys Market* and therefore affirm the order below.[4]

The United Steelworkers of America and two of its locals represent the production and maintenance employees of Buffalo Forge Company, a manufacturing and sales concern with three plants and offices in or nearby Buffalo, N. Y. The same international union and two other locals represent the company's office clerical and technical employees. On November 16, 1974, in negotiating their first collective bargaining agreement with Buffalo Forge, the unions representing the office clerical and technical employees went out on strike and began picketing all three of the company's Buffalo area sites. On November 18, the production and maintenance employees at one of the plants refused for the day to cross the picket lines. Three days later, the unions representing the production and maintenance employees at the three plants called a work stoppage at all the plants, which gave rise to this suit for damages and injunctive relief by Buffalo Forge against these unions and various named officers and agents of the unions. On December 13, the district court denied the company's request for a preliminary injunction and the instant appeal followed, 28 U.S.C. § 1292(a)(1).[5]

3. Cases supporting the district court's holding in this case include Amstar Corp. v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, 468 F.2d 1372 (5th Cir. 1972); General Cable Corp. v. The International Brotherhood of Electrical Workers, Local Union 1644, AFL–CIO, 331 F.Supp. 478 (D.Md.1971); Simplex Wire and Cable Co. v. Local 2208 of the International Brotherhood of Electrical Workers, AFL–CIO, 314 F.Supp. 885 (D.N.H.1970). Contrary authority are Napa Pittsburgh, Inc. v. Automotive Chauffeurs, Parts and Garage Employees, Local Union No. 926, 502 F.2d 321 (3d Cir. 1974) (en banc), cert. denied, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974); Monongahela Power Co. v. Local No. 2332 International Brotherhood of Electrical Workers, AFL–CIO–CLC, 484 F.2d 1209 (4th Cir. 1973); Inland Steel Co. v. Local Union No. 1545, United Mine Workers of America, 505 F.2d 293 (7th Cir. 1974); Barnard College in the City of New York v. Transport Workers Union of America, AFL–CIO, 372 F.Supp. 211 (S.D.N.Y.1974).

4. The appellees also urge an alternative ground for affirmance: that the appellant is not entitled to injunctive relief because it has not made "every reasonable effort" to settle the dispute by negotiation, as required by 29 U.S.C. § 108. Since we concur in the district court's basis for denying the preliminary injunction, we need not reach the merits of this contention.

5. § 1292. Interlocutory decisions

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

\* \* \* \* \* \*

The work stoppage then terminated on the next regular work day after the district court's order. The controversy remains a live one, however, for the office clerical and technical employees are still on strike and so long as their picketing continues, the work stoppage under review may, as stipulated by the parties, "be resumed at any time in the near future." [6]

In Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Supreme Court found that § 301(a) of the Labor Management Relations Act, which vests jurisdiction in federal district courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry representing commerce," in no way further qualifies the preexisting nonabsolute bar established by § 4 of the Norris-LaGuardia Act to federal court injunctions "in any case involving or growing out of any labor dispute." The dissenting justices contended that the majority's decision was inconsistent with the strong congressional policy favoring settlement of labor-management differences by arbitration and with United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and other recent Supreme Court cases attempting to give full play to that policy. Writing for the Sinclair Refining dissenters, Mr. Justice Brennan suggested an accommodation between the two statutory provisions:

A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and

the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity— whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

Sinclair Refining, supra, 370 U.S. 195 at 228, 82 S.Ct. 1328 at 1346 (emphasis in original). Eight years later in *Boys Market*, Mr. Justice Brennan made the above suggestion the core of his majority opinion overruling *Sinclair Refining*. *Boys Market, supra*, 398 U.S. 235 at 254, 90 S.Ct. 1583.

In assessing the extent to which § 301(a) modified the anti-injunction policy of Norris-LaGuardia, we base the tenor of our inquiry on the Court's emphasis in *Boys Market* on the narrowness of its holding in favor of injunctive relief. *Id.* 398 U.S. at 253, 90 S.Ct. 1583. *Compare* Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586, 588 (2d Cir. 1971). In narrowly construing the exception to § 4 of the Norris-LaGuardia Act carved out by § 301(a) in the view of the *Boys Market* Court, then, we take particular note of the various indications in *Boys Market* and in the *Sinclair Refining* dissent upon which the latter drew that only strikes *over a grievance* which the union has agreed to arbitrate are within the scope of the exception. *See, e. g., Boys Market, supra*, 398 U.S. 235 at 248, 254, 90 S.Ct. 1583; *Sinclair Refining, supra*, 370 U.S. 195 at 217–18, 224–25, 228, 82 S.Ct. 1328. The strike at issue in the instant case is not over a grievance with Buffalo Forge but instead is simply a manifestation of the striking workers' deference to other employees' picket lines.

---

**6.** Joint Appendix at 2a.

This distinction is crucial in light of the need, recognized in *Boys Market* and the *Sinclair Refining* dissent, to reconcile the anti-injunction policy of Norris-La-Guardia with the pro-arbitration policy of the later act. If a strike not seeking redress of any grievance is enjoinable, then the policy of Norris-LaGuardia is virtually obliterated. For since a no-strike provision, if not in fact present in the employment contract, will be implied where the agreement sets up mandatory arbitration machinery, Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 104–06, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), it is, as the Fifth Circuit has concluded, "difficult to conceive of any strike which could not be so enjoined." Amstar Corp. v. Amalgamated Meat Cutters and Butchers Workmen of North America, AFL–CIO, 468 F.2d 1372, 1373 (5th Cir. 1972). Undue expansion of the "narrow" holding in *Boys Market* may be avoided, on the other hand, by proper attention to the actual threat posed by strikes not over grievances with the employer to the policies promoted by § 301(a). A strike not seeking to pressure the employer to yield on a disputed issue is not an attempt to circumvent arbitration machinery established by the collective bargaining agreement. Accordingly, it does no violence to the federal pro-arbitration policy to require federal courts to refrain from enjoining such strikes. *See* Napa Pittsburgh, Inc. v. Automotive Chauffeurs, Parts and Garage Employees, Local Union No. 926, 502 F.2d 321, 330–31 (3d Cir. 1974) (en banc) (Hunter, J. & Seitz, C. J., dissenting), cert. denied, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974); Inland Steel Co. v. Local Union No. 1545, United Mine Workers of America, 505 F.2d 293, 300–01 (7th Cir. 1974) (Fairchild, J., dissenting).

Since the work stoppage under review is motivated solely by respect for other employees' picket lines [7] and plainly is not aimed at resolving an existing dispute by extra-arbitral means, the district court's order denying a preliminary injunction gave effect to § 4 of the Norris-LaGuardia Act without disservice to the policies informing § 301(a) of the Labor Management Relations Act. Chief Judge Curtin's application of the two provisions to the context before him comported with the Supreme Court's direction to district courts in its *Boys Market* opinion to reconcile the two provisions rather than simplistically read a repeal of § 4 into the later enactment.

The order of the district court denying a preliminary injunction is therefore affirmed.

Affirmed.

---

[7] In the district court, Buffalo Forge claimed that the work stoppage was at least in part a protest against truck driving assignments to the production and maintenance employees. The district court determined that this claim was unsupported by the evidence before it, and the appellant expressly disclaims seeking to disturb the district court's finding on this appeal. Brief for Appellant at 10.