BETHLEHEM MINES CORPORATION,
Plaintiff,

v.

UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.

Civ. A. No. 72–825.

United States District Court,
W. D. Pennsylvania.

April 17, 1974.

Donald B. Heard, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Lloyd F. Engle, Jr., Melvin P. Stein, Pittsburgh, Pa., for defendants.

FINDINGS, OPINION AND ORDER

WEBER, District Judge.

## FINDINGS

The parties hereto are employer and several labor organizations representing its employees. They are parties to a collective bargaining agreement entitled the National Bituminous Coal Wage Agreement of 1971 now in full force and effect. The labor agreement contains a mandatory grievance procedure culminating in compulsory arbitration that requires that all disputes and claims be settled through that procedure. Beginning at 4 p. m., April 11, 1974 members of certain of defendant Local Unions engaged in a work stoppage and on April 15, 1974 and continuing until the present time all of defendant Bethlehem Mines Corporation's coal mines are shut down and not working by reason of members of defendant Local Unions refusal to work. The entrances to the plaintiff's mines are being picketed by individuals who are not employees of plaintiff and who are strangers to the mines in question. The work stoppage now in effect does not relate to any

grievance or dispute between Bethlehem Mines Corporation management and any individual members of defendant Local Unions. There is no question of safety or health involved by reason of any condition inside the mines of Bethlehem Mines Corporation.

Bethlehem Mines Corporation is ready to arbitrate the question of the right of its employees to refuse to work because of the presence of pickets at its gate.

As a result of such work stoppages and related shutdowns the plaintiff has lost great quantities of coal production which are required for the continued operation of the steel mills of Bethlehem Steel Company. The production of these mines is a low volatile coal required for coking operations and the plaintiff company has no other source of supply either from other mines owned by it or on the open market. The lost production cannot be made up by future production. It would not be possible for the defendants jointly or severally to compensate plaintiff in damages for the loss of production occasioned.

There is no evidence that Defendant International Union, Defendant District 2 or any Defendant Local has applied any sanctions to prohibit such work stoppages.

The stoppages at each of the mines is continuing and will work further irreparable harm.

We find that greater harm will be done to the employer from a refusal of the injunction than to the unions from its issuance.

The merits of the reasons for the work stoppage, the reasons for the picketing, the justification for the members of Defendant Union in obeying the requests of the pickets, and the rights of the employer to require continued work are not matters which can be considered by the court at this time. The sole question is whether these must be considered under the mandatory grievance procedure in the contract. We find that under the terms of the contract which provide that "all disputes and claims

which are not settled by agreement shall be settled by the machinery provided" requires that this be done.

## DISCUSSION

The parties to this suit are employer and employee and they are parties to a collective bargaining agreement. The plaintiff is faced with a massive concerted work stoppage by members of the various defendant Local Unions which has caused a shutdown of all mines in its Cambria Division.

The plaintiff seeks and the defendants resist an injunction to halt the work stoppage. The reason for the work stoppage is the appearance at the entrances of plaintiff's mines of individuals who are not employees of plaintiff urging the members of defendant local unions to cease work.

All of the other conditions for injunctive relief are present, irreparable injury, the continuance of such conduct and its likelihood of continuance in the future, and the fact that the employer will suffer more from denial of the injunction than the union will from its issuance.

The essential element lacking according to the defendant unions is the existence of an issue which the parties can be compelled to arbitrate under their contract, under the doctrine of *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 [1970].

It is incumbent upon this court, under *Boys Markets,* to make a determination that the contract here does have this effect.

It is always argued that the National Bituminous Coal Wage Agreement of 1971 has no prohibition against strikes. This matter has been determined in *Gateway Coal Co. v. United Mine Workers,* 42 L.W. 4095, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974):

"[I]njunctive relief also may be granted on the basis of an implied undertaking not to strike. In *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S.

982

95, 82 S.Ct. 571, 7 L.Ed.2d 593 [1962], the Court held that a contractual commitment to submit disagreements to final and binding arbitration gives rise to an implied obligation not to strike over such disputes." [42 L.W. 4099, 94 S.Ct. 638].

The rationale of granting equitable relief for the enforcement of arbitration agreements was drawn from the Court's opinion in *Boys Markets*.

" '[A] no-strike obligation, express or implied, is the *quid pro quo* for an undertaking by the employer to submit grievance disputes to the process of arbitration. . . . Any incentive for employers to enter into such an agreement is necessarily dissipated if the principal and most expeditious method by which the no-strike obligation can be enforced is eliminated.' 398 U.S., at 248, 90 S.Ct., at 1591. (Citation omitted.)" [42 L.W. 4100, 94 S.Ct. 639].

The Court continued that an arbitration agreement is usually linked with a concurrent no-strike obligation, but they are separate issues, and a party might expressly negate any implied no-strike obligation.

"Absent an explicit expression of such an intention, however, the agreement to arbitrate and the duty not to strike should be construed as having coterminous application." [42 L.W. 4100, 94 S.Ct. 639].

The Court in *Gateway* was construing the identical contract that we have in issue here; the relevant portions of the contract are:

## NATIONAL BITUMINOUS COAL WAGE AGREEMENT OF 1971

### Article I—ENABLING CLAUSE
". . .

It is the intent and purpose of the parties hereto that this agreement will promote and improve industrial and economic relationship in the bituminous coal industry and to set forth herein the basic agreements covering rates of pay, hours of work and conditions of employment to be observed between the parties, and shall cover the employment of persons employed in the bituminous coal mines covered by this agreement."

### Article XVII—SETTLEMENT OF DISPUTES
". . .

Section (b) Grievance Procedure

Should differences arise between the Mine Workers and the Employer as to the meaning and application of the provisions of this agreement, or should differences arise about matters not specifically mentioned in this agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time. . . .".

### Article XX—MAINTAIN INTEGRITY OF CONTRACT

"The United Mine Workers of America and the Employers agree and affirm that they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Disputes' article of this agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts."

The legislative policy favors arbitration of labor disputes. 29 U.S.C. § 173(d).

All disputes are presumed arbitrable: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that cov-

ers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 [1960].

In the instant case the work stoppage is the result of a concerted refusal of employees to work because of the existence of pickets from another employer.

It would not be denied that the employer would have the remedy of disciplining or discharging its employees who refused to work. Sinclair Oil Corp. v. Oil, Chemical and Atomic Workers, Int. U., 452 F.2d 49 [7th Cir. 1971]. If it did so, the union could file a grievance on behalf of these employees which would be subject to mandatory arbitration. General Cable Corp. v. IBEW Local Union 1644, 331 F.Supp. 478 [D. Md.1971]. The question for arbitration would then be; "do employees have the right to refuse to come to work because of the picket line?"

This is the same question we have here. Does the form of the question, or the identity of the grievant change the nature of the dispute? The company would be bound to arbitrate if the union presented this grievance, and the union is also bound to arbitrate the company's grievance rather than strike. Avco Corp. v. Local No. 787, 459 F.2d 968, 972 [3rd Cir. 1972]; Monongahela Power Co. v. Local No. 2332, IBEW., 484 F.2d 1209 [4th Cir. 1973].

■ Similarly, there being an implied obligation not to strike, the company would have an action for damages for breach of that obligation. Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95, 104–106, 82 S.Ct. 571, 7 L.Ed.2d 593 [1962]. If the circumstances are productive of irreparable harm, the remedy of damages is clearly inadequate, and injunctive relief is necessary:

"[A]n award of damages after a dispute has been settled is no substitute for an immediate halt to an illegal strike. Furthermore, an action for damages prosecuted during or after a labor dispute would only tend to aggravate industrial strife and delay an early resolution of the difficulties between employer and union." Boys Markets, Inc. v. Retail Clerks, 398 U. S. 235, 248, 90 S.Ct. 1583, 1591, 26 L. Ed.2d 199 [1970].

Looking at the contract itself, the language conveys a clear intent that all differences should be settled by the grievance procedure:

"Should differences arise between the Mine Workers and the Employer as to the meaning and application of the provisions of this agreement, or should *differences arise about matters not specifically mentioned in this agreement, or should any local trouble of any kind arise at the mine . . . . . .*". (emphasis supplied). Art XVII(b).

and

"*all disputes and claims which are not settled by agreement* shall be settled by the machinery provided . . .". (emphasis supplied) Art. XX.

The question here is, "do the members of defendant Union have the right collectively to refuse work because of the presence of strangers to the company at the entrance urging them not to work?"

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this proceeding under the Labor-Management Relations Act of 1947, 61 Stat. 136, § 301; 29 U.S.C. § 185.

2. Plaintiff is an employer and is engaged in commerce or an industry affecting commerce within the meaning of the Act.

3. Defendants United Mine Workers of America; United Mine Workers of America, District # 2; and United Mine Workers of America, Local Unions No. 1368, 850, 1386, 6359, 6394 and 6411 of the United Mine Workers of America,

are labor organizations within the meaning of the Act.

4. The Defendants are the collective bargaining representatives of plaintiff's hourly paid production and maintenance workers.

5. Industrial peace requires a prompt resolution of disputes.

6. The work stoppage which began in plaintiff's Cambria Division mines on April 11, 1974, and which is continuing at the present time in all of said plaintiff's mines were differences which arose between the defendants and the employer which all parties were contractually obligated to resolve under the terms of the National Bituminous Coal Wage Agreement of 1971, and, in particular the section denominated Art. XVII "Settlement of Disputes, Sec. (b) Grievance Procedure" and Art. XX "Maintain Integrity of the Contract". The Contract by its mandatory grievance procedure precludes a strike over a dispute of this kind. Accordingly, the defendant Unions' resort to a strike and work stoppage was in violation of that contract. See Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

7. Because this strike and work stoppage causes immediate and irreparable harm and injury, loss and damage to the plaintiff, and for the additional reason that the court believes that breaches of the Contract by the Union will continue unless an injunction is issued, the court is of the opinion that an injunction is appropriate in the premises. Boys Markets, Inc. v. Retail Clerks Union of Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 [1970].

8. Since defendants are unwilling to voluntarily implement internal methods of preventing work stoppages, federal labor policy favoring labor peace requires the issuance of an injunction to guarantee their compliance with the provisions of the collective bargaining agreement.

9. The defendant Unions are responsible for the mass action of their members.

10. Plaintiff has suffered irreparable harm and injury and will continue to suffer irreparable harm and injury as a result of the violation of the 1971 Labor Agreement by the defendant Unions and their members. An award of damages cannot possibly compensate plaintiff for the loss of coal production resulting from these work stoppages or strikes.

11. Plaintiff has no adequate remedy at law for the refusal of the defendant Unions and their members to utilize the procedures to which the parties agreed for settling differences or disputes.

12. Greater injury will be suffered by the plaintiff from the denial of a preliminary injunction than will be suffered by the defendant Unions and their members from its issuance.

13. From the evidence as presented, there is a reasonable likelihood that the plaintiff will succeed at the final hearing on the merits of this case.

ORDER

And now this 17th day of April, 1974, after notice and hearing of the continuance of the temporary restraining order granted April 12, 1974 as a preliminary injunction, and after hearing testimony thereon, it is hereby ordered that the temporary restraining order granted April 12, 1974 by the Honorable Hubert I. Teitelbaum, District Judge, be and the same is hereby continued in full force and effect as a preliminary injunction until further Order of this Court.

Copies of this Order may be served by attorneys for the plaintiff or their representatives.