**ARMCO STEEL CORPORATION, a corporation, et al., Appellants,**

v.

**UNITED MINE WORKERS OF AMERICA et al., Appellees.**

**UNITED STATES STEEL CORPORATION, Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA et al., Appellees.**

Nos. 74–1323 and 74–1324.

United States Court of Appeals,
Fourth Circuit.

Argued April 30, 1974.

Decided Nov. 8, 1974.

David D. Johnson, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Forrest H. Roles and Spilman, Thomas, Battle & Klostermeyer and R. Page Henley, Jr., Charleston, W. Va., on brief), for appellants in No. 74–1323.

Leonard L. Scheinholtz, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Charles M. Love and Campbell, Love, Woodroe & Kizer, Charleston, W. Va., on brief), for appellant in No. 74–1324.

Joseph A. Yablonski, Washington, D. C. (Lewis D. Sargentigh, James M. Haviland, Pittsburgh, Pa., Steven B. Jacobson, Washington, D. C., Bruce C. Boyens, Leo Catsonis and Catsonis & Linkous, Charleston, W. Va., on brief), for appellees in Nos. 74–1323 and 74–1324.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Protesting certain state and federal regulations on the allocation, distribution and sale of gasoline during the oil crisis in early 1974—regulations which it was asserted unfairly interfered with their travel to and from work—certain unidentified coal miners allegedly affiliated with various locals of the United Mine Workers, but not employees of either of the plaintiffs in these two actions, set up picket lines about the mines operated by the plaintiffs United States Steel Corporation and Armco Steel Corporation. The plaintiffs' employees, all of whom were represented by the United Mine Workers of America under the terms of the National Bituminous Coal Wage Agreement of 1971, refused to cross these picket lines, thereby causing a work-stoppage at the mines of the two plaintiffs.

(a) *United States Steel Corporation v. United Mine Workers*

The plaintiff United States Steel promptly filed in the District Court an action under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, seeking (1) to enjoin the

work-stoppage as allegedly in violation of the Bituminous Coal Wage Agreement, (2) to require compliance by the defendants with the arbitration procedures of that agreement, and (3) for damages. The defendants in this action are the United Mine Workers of America, District No. 29 of the national union and the six locals, representing the employees at the plaintiff's several mines. Contemporaneous with the filing of the action, it moved before the District Court for a temporary injunction against the work-stoppage. After hearing, the District Court entered an order denying both preliminary and permanent injunctive relief. In so doing, it held that, while the plaintiff was "suffering irreparable damage and harm from refusal of the members of said defendant Local Unions to cross picket lines maintained by unidentified pickets," the work-stoppage did not represent "an arbitrable matter under the wage agreement" and would not provide a basis for injunctive relief under Boys Markets v. Clerks Union (1970), 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199.[1] It is from that order that the United States Steel Corporation prosecutes its appeal. *See,* Section 1291, 28 U.S.C.

#### (b) *Armco Steel Corporation v. United Mine Workers*

In its original complaint, filed about the same time as that of the United States Steel, Armco Steel set forth three counts: one under the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq., a second, under the Emergency Petroleum Allocation Act of 1973 (P.L. 93–159) and the Economic Stabilization Act of 1970, as amended (12 U.S.C., § 1904), and a third, a common law count for tortious interference with employees contrary to state law. After hearing, the District Court held it was without jurisdiction to

entertain counts one and two[2] and jurisdiction over count three being pendent, it dismissed the third count as well. At this point Armco moved for and was granted leave to amend by adding a fourth count, setting up a claim under Section 301 of the Labor-Management Relations Act of 1947, as amended, similar to that asserted by the United States Steel. Following this amendment, Armco applied for a temporary injunction on the same grounds pressed by United States Steel and the District Court made a similar ruling. Armco has appealed both the dismissal of its anti-trust action as well as the dismissal of its application for relief under its fourth count.

#### (c) *Consolidation for Appeal of Two Cases*

Since the appeals of both United States Steel and Armco have the same factual background and, at least so far as the actions under Section 301 are concerned, present similar issues, we consolidated the appeals for hearing and shall decide the two appeals in a single opinion.

#### I.

#### *Section 301 Actions*

First consideration will be given to the Section 301 actions and the denial of relief therein by the District Court in both cases on like grounds. In United States Steel injunctive relief only was denied. In Armco all relief was denied.

In *Boys Markets* it was established that a District Court, subject to the traditional principles of equity, has jurisdiction under Section 301 to grant injunctive relief against a work-stoppage on the part of the union if the collective bargaining agreement contains a mandatory arbitration procedure and the work-stoppage is over a grievance or involves a matter which the parties are

---

1. On application under FRAP Rule 8, an injunction in both cases pending appeal was granted by a member of this Court.

2. Appeal from the dismissal of the second count is to the Temporary Emergency Court

of Appeals. (Emergency Petroleum Allocation Act of 1973, § 5, incorporating by reference § 211(b)(c) of Economic Stabilization Act of 1970, 12 U.S.C. § 1904 (note) ). Armco has filed an appeal to that Court and that appeal is pending.

contractually bound to arbitrate. Monongahela Pow. Co. v. Loc. No. 2332 (4 Cir., 1973), 484 F.2d 1209, 1214, n. 14; Wilmington Shipping Company v. International Longshoremen's Assn. (4th Cir. 1974); cf., Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters (4th Cir. 1974), 497 F.2d 311. The defendants, however, contend that *Boys Markets* is inapposite in these case for three reasons: 1. The Bituminous Coal Agreement of 1971 does not include a specific "no-strike" provision or promise not to engage in any work-stoppage which, under their view of *Boys Markets,* is essential to injunctive relief; 2. The dispute, giving rise to the work-stoppage, was not arbitrable; and 3. The refusal of workers to violate a picket line may not be enjoined.

 The first objection of the defendants may be quickly disposed of. An agreement not to strike and not to engage in a work-stoppage over any arbitrable issue may be implied from a mandatory arbitration provision in a labor-management contract. This was specifically held in Gateway Coal Co. v. United Mine Workers (1974), 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583. There the Court said:

> "Although the collective-bargaining agreement in *Boys Markets* contained an express no-strike clause, injunctive relief also may be granted on the basis of an implied undertaking not to strike. In Teamsters Local v. Lucas Flour Co., 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593] (1962), the Court held that a contractual commitment to submit disagreements to final and binding arbitration gives rise to an implied obligation not to strike over such disputes." (p. 381, 94 S.Ct. p. 638)

It should be noted that the 1968 agreement involved in *Gateway* has like language to the 1971 agreement involved here. And in its decision construing that earlier provision, the Court held categorically that such Agreement incorporated by implication a no-strike provision and a promise to submit to binding arbitration any arbitrable dispute or issue. It is true the obligation found by the Court to exist was an implied and not an express obligation. But, as *Gateway* decided, an implied obligation not to strike is as effective as an express obligation in supporting jurisdiction under *Boys Markets.* Actually, *Gateway's* holding that an implied agreement not to strike is as effective as an express one is little more than a reiteration of what had been indicated in *Boys Markets* itself. There, the Court, in stating its rule, upheld jurisdiction to grant injunctive relief on the basis of "a no-strike obligation, express or implied," thereby equating "implied" with "express" obligations (398 U.S. at p. 248, 90 S.Ct. 1583). It follows, therefore, that there was an implied obligation on the Union under this Agreement to submit to mandatory arbitration any arbitrable issue between the Union and the employers and that this "implied" obligation was as good as an "express" provision, so far as the application of *Boys Markets* was concerned.

 Accepting the postulate that there was an obligation under the Agreement involved here, to submit any arbitrable issue to mandatory arbitration, the next issue is: Was the refusal of the members of the Union to cross the picket lines an arbitrable issue? Monongahela Pow. Co. v. Local No. 2332, *supra* (484 F.2d 1209), seems conclusive that it was. In that case, the Court stated that a court, in construing a labor agreement, should "resolve all doubt in favor of arbitration, and order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (at 1213). Following this premise, the Court held that "a union's no-strike commitment can give rise to an arbitrable dispute warranting judicial intervention in the form of a labor injunction." [3]

3. *See,* Wilmington Shipping Company v. International Longshoremen's Association, *supra* (Adams, J., concurring), summarizing the holding in *Monongahela.*

The dispute there involved was the same as here, *i.e.,* the arbitrability of the refusal of members of a local union to cross picket lines established by another local. The picket lines, which the members of the defendant local were honoring in that case, were established for the purpose of showing "sympathy and solidarity" with employees on strike in another Division of the employer and represented by another local. The objective of the picketing was as unrelated and foreign to the actual working conditions of the employees at the installation where the members of the defendant Union worked as was the objective of the picketing in these cases. And the contractual obligation to arbitrate was as definite as it was in *Monongahela.* Thus, the Agreement in these cases included a positive affirmance on the part of all parties "that they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement Disputes' article of this agreement unless national in character * * *." Under the "Settlement of Disputes" provision of the Agreement, the parties agreed for final and binding arbitration of any dispute about matters specifically mentioned in the Agreement and "about matters not specifically mentioned in this agreement," particularly "should any local trouble of any kind arise at the mine." And, in order to make the arbitration provision more all-inclusive, the Agreement calls for binding arbitration of any controversy "as to the meaning and application of the provisions of this agreement." The only difference between this Agreement and the labor contract involved in *Monongahela* is that in the former there is an implied no-strike provision and in the latter an express no-strike provision. *Gateway,* however, makes such difference immaterial. *Monongahela* and *Wilmington Shipping Company,* which reaffirmed *Monongahela,* establish, so far as this Circuit is concerned, the arbitrability of the grievance here.

Since argument of these appeals, counsel for the Union has called to our attention Gary-Hobart Water Corporation (1974) 210 N.L.R.B. No. 87. We find nothing in that decison at variance with the above conclusions. The Board recognized, as we held in *Monongahela,* that the right of employees "to refuse to cross another union's picket line, may be waived by appropriate provisions in a collective-bargaining agreement." It found authority for that conclusion, as we did, in N.L.R.B. v. Rockaway News Supply Co. (1953), 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832. It held, of course, that the waiver was "only as extensive as the scope of the grievance and arbitration procedure of the contract in question" and that "when the subject of the dispute is not cognizable under the grievance-arbitration procedure the *quid pro quo* for the no-strike clause is no longer present and the no-strike clause does not apply." This is but another way of expressing the principle that *Boys Markets* applies only when the grievance is arbitrable. But the statement of such a principle presents no impediment to the plaintiffs' demand for injunctive relief in these cases: The arbitrability of the grievance in these cases is, as we have already said, clear under the Agreement. There is thus nothing in *Gary-Hobart* that militates against the conclusions reached above.

The final argument of the defendants that the right of employees to honor a picket line, even in the face of a no-strike provision in the collective-bargaining agreement executed on behalf of such employees, is federally protected and may not be the subject of injunctive relief was answered in *Monongahela,* where, relying on N.L.R.B. v. Rockaway News Supply Co., *supra,* we said that the "statutory right of employees to refuse to cross a picket line * * * may be waived * * * by the action of their union in agreeing to a no-strike clause." (484 F.2d p. 1214).

The appellees do not appear to dispute nor could they well dispute that the plaintiffs have established their

right to injunctive relief under the traditional equity rules. The District Court found that the defendants had engaged in a work-stoppage and were likely to continue to do so unless restrained. It concluded, too, that the plaintiffs, as a result of such work-stoppage were suffering irreparable injury for which they had no adequate remedy at law. Those findings, along with our conclusion that the dispute centering on the work-stoppage, contrary to the conclusion reached by the District Court, was arbitrable, entitled the plaintiffs to injunctive relief.[4] The denial of temporary injunctive relief and the dismissal of the actions for injunctions and damages were accordingly error.

## II.

### Armco's Anti-Trust Action

■ Turning now to the anti-trust action pressed by Armco: The District Court correctly dismissed so much of Armco's original and amended complaint as sought to set up a claim under the anti-trust laws against the defendants. In Apex Hosiery Co. v. Leader (1940), 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, the Court emphasized that the Sherman Act had never been applied "in any case, whether or not involving labor organizations or activities, unless the Court was of opinion that there was some form of restraint upon commercial competition in the marketing of goods or services and finally this Court has refused to apply the Sherman Act in cases like the present in which local strikes conducted by illegal means in a production industry prevented interstate shipment of substantial amounts of the product but in which it was not shown that the restrictions on shipments had operated to restrain commercial competition in some substantial way."[5] There is no allegation or contention that the

strike of the unions involved, however illegal it may have been, was for the purpose of restraining commercial competition in the marketing of goods or services, or that it had operated to restrain commercial competition in some substantial way. There was accordingly no cause of action stated under the Sherman Act.

Armco's reliance on Los Angeles Meat & Provision Drivers Union v. United States (1962), 371 U.S. 94, 83 S.Ct. 162, 9 L.Ed.2d 150 and Columbia River Packers Association, Inc. v. Hinton (1942), 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 is misplaced. In the former case, the Court expressly found that the case "was not one 'involving or growing out of any labor dispute,' but one involving an illegal combination between businessmen and a union to restrain commerce. In such a case, as Allen Bradley Co. clearly held, neither the Norris-LaGuardia Act nor the labor exemption provisions of the Clayton Act are applicable." (371 U.S. at 102, 83 S.Ct. at 166) In Hinton, the dispute was one "among businessmen over the terms of a contract for the sale of fish"; it was one "altogether between fish sellers and fish buyers." The sellers of fish were "not employees of the petitioners or of any other employer, nor do they seek to be." The controversy was plainly not a labor dispute and could not qualify under the Norris-LaGuardia exemption.

### Conclusion

The District Court was in error in refusing the plaintiffs temporary injunctive relief and in dismissing the actions for a permanent injunction under the rule in Boys Markets; it, however, properly dismissed the cause of action asserted by the plaintiff Armco under the anti-trust law. The Court also erred in dismissing the cause of action for damages under § 301 in the Armco case.

---

4. The right to recover of the defendants in damages is not before us and we express no opinion thereon. For an excellent discussion of such right, see Note, 6 Ga.L.Rev. 797 (1972).

5. 310 U.S. at pp. 495–497, 60 S.Ct. at pp. 993–994.

Since we hold a cause of action was stated in count four in the Armco amended complaint, the District Court on remand should reconsider its ruling dismissing the pendent state law count in that case. Mine Workers v. Gibbs (1966), 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

These actions are accordingly affirmed in part, reversed in part, and remanded with directions in conformity with the foregoing conclusions.