**VALMAC INDUSTRIES, INC.,**
Appellee,

v.

**FOOD HANDLERS LOCAL 425 OF the AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, et al.,**
Appellants.

No. 74–1660.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1975.

Decided July 29, 1975.

Rehearing and Rehearing En Banc Denied Aug. 20, 1975.

1. Modified 489 F.2d 225 (5th Cir. 1973) (en banc).

G. William Baab, Dallas, Tex., for appellant.

John A. Davis, III, Pine Bluff, Ark., for appellee.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE, District Judge.[*]

WEBSTER, Circuit Judge.

In *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held that, notwithstanding the anti-injunction provisions of the Norris-LaGuardia Act,[1] under appropriate circumstances a federal court may enjoin a strike or work stoppage pending arbitration of a labor dispute arising under a collective bargaining agreement containing no-strike and arbitration clauses. In this appeal, we are asked to determine whether a *Boys Markets* injunction may be issued when the work stoppage occurred not as the result of an independent contract dispute but rather because one group of employees honored a union picket line established by another group of employees covered under a separate collective bargaining agreement. We also consider whether the company may obtain such an injunction without submitting the work stoppage issue to binding arbitration. The specific controversy before us arose from the following facts:

Valmac Industries, Inc. operates four poultry-processing plants, each in a different town in Arkansas. Each plant was governed by a separate collective bargaining agreement between Valmac and Food Handlers Local 425 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, the exclusive bargaining representative of certain employees at each plant.

Employees at the Valmac plants at Russellville and Dardanelle went on strike when both their collective bargaining agreements expired on June 29, 1974. On July 1 and 2, striking employees from those plants established picket lines at Valmac's two other facilities in Waldron and Pine Bluff.[2] They carried picket signs that were informational in nature.[3]

The employees at the Waldron and Pine Bluff plants honored the picket lines and refused to work. Although the Waldron and Pine Bluff labor contracts which were then still in effect specifically permitted individual employees to honor authorized union picket lines,[4] these same collective bargaining agreements contained express no-strike clauses.[5] Proceeding on the theory that the resulting work stoppages at Waldron and Pine Bluff were in violation of such no-strike provisions, Valmac sought preliminary injunctive relief in the United States District Court for the Eastern District of Arkansas.[6] Following an *ex*

---

* The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri, sitting by designation.

1. 29 U.S.C. § 104.

2. Russellville and Dardanelle are in close proximity, though situated on opposite sides of the Arkansas River. Pine Bluff is approximately 125 miles away, to the southeast, and Waldron approximately 60 miles to the southwest.

3. The picket signs read:

   "Valmac Industries, Inc."
   Russellville and Dardanelle,
   Arkansas on strike
   Foodhandlers Local Union 425.

4. Article XV of the collective bargaining agreements in effect at the Waldron and Pine Bluff plants provides:

   It shall not be a violation of this Agreement for an employee to refuse to pass through a picket line authorized by this Union.

5. Article XIV of the Waldron and Pine Bluff contracts states:

   During the whole period this Agreement is in effect, the Company shall not lockout its employees and the Union shall not authorize or sanction any strike, stoppage, slow-down or suspension of work against the Company, except for failure of the other party to submit to the arbitration procedure as provided for in Article V of this Agreement, and only then upon forty-eight (48) hours written notice to the other party, and the other party's continued failure to submit to arbitration.

6. The jurisdiction of the District Court was predicated on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a):

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

*parte* hearing before Judge Oren Harris, a temporary injunction was issued on July 2, 1974. After a subsequent hearing at which both parties were represented, a preliminary injunction issued on August 1, 1974, which barred the union from further picketing at Waldron and Pine Bluff and from carrying on concerted strike activity there. The parties, however, were not expressly ordered to submit their dispute to arbitration. The union appeals, asking us to decide whether the relief granted exceeds the purportedly narrow exception to the anti-injunction provisions of the Norris-LaGuardia Act set forth in *Boys Markets, supra.*

I.

The issue presented here has caused division in the circuits. Under similar factual circumstances those jurisdictions which have held the court was without jurisdiction to enjoin the work stoppage have concluded that the work stoppage must be one which is *"over a grievance which both parties are contractually bound to arbitrate,"* 398 U.S. at 254, 90 S.Ct. at 1594 (emphasis added), before the narrow exception recognized in *Boys Markets* can attach. *Buffalo Forge Co. v. United Steelworkers,* 517 F.2d 1207 (2d Cir. 1975); *Amstar Corp. v. Amalgamated Meat Cutters,* 468 F.2d 1372 (5th Cir. 1972); *Carnation Co. v. Teamsters Local 949,* 86 LRRM 3012 (S.D.Tex.1974); *General Cable Corp. v. IBEW Local 1644,* 331 F.Supp. 478 (D.Md.1971); *Simplex Wire and Cable Co. v. IBEW Local 2208,* 314 F.Supp. 885 (D.N.H.1970). If this were not so, it is contended, any work stoppage would be subject to an injunction where the collective bargaining agreement contains a no-strike provision.

On the other hand, those jurisdictions which have approved injunctions where the work stoppage itself is the question to be arbitrated have stressed the dominant policy favoring the peaceful settlement of labor disputes by means of binding arbitration and have suggested that to limit the scope of *Boys Markets* to grievances entirely independent of the underlying work stoppage would leave the employer helpless to compel the union to honor its agreement to arbitrate rather than to strike. *Armco Steel Corp. v. UMW,* 505 F.2d 1129 (4th Cir. 1974); *Inland Steel Co. v. Local 1545, UMW,* 505 F.2d 293 (7th Cir. 1974); *NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926,* 502 F.2d 321 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974); *Wilmington Shipping Co. v. Longshoremen,* 86 LRRM 2846 (4th Cir. 1974); *Pilot Freight Carriers, Inc. v. Teamsters Union,* 497 F.2d 311 (4th Cir.), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Monongahela Power Co. v. IBEW Local 2332,* 484 F.2d 1209 (4th Cir. 1973); *Bethlehem Mines Corp. v. UMW,* 375 F.Supp. 980 (W.D.Pa.1974); *Barnard College v. Transport Workers Union,* 372 F.Supp. 211 (S.D.N.Y.1974); *General Cable Corp. v. IBEW Local 1798,* 333 F.Supp. 331 (W.D.Tex.1971); *cf. Northwestern Airlines, Inc. v. Airline Pilots Association,* 442 F.2d 246 (8th Cir. 1970), *modified on rehearing,* 442 F.2d 251, *cert. denied,* 404 U.S. 871, 92 S.Ct. 70, 30 L.Ed.2d 116 (1971) (work stoppage caused by refusal to cross sister union's picket line held arbitrable dispute under Railway Labor Act). As the Third Circuit observed in a different context:

> The 'no-strike' clause is the *quid pro quo* which [the Company] obtained for agreeing to submit to compulsory arbitration, and the Union agreed to forbear from striking in order to require such arbitration. To allow the Union to abandon its remedy of arbitration in order to disregard the 'no-strike' clause would render the collective bargaining agreement illusory and would subvert the policy favoring the peace-

States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

ful settlement of labor disputes by arbitration.

*Avco Corp. v. Local 787, UAW,* 459 F.2d 968, 972 (3d Cir. 1972).

The congressional policy favoring arbitration as a means of resolving industrial disputes was firmly recognized in the *Steelworkers Trilogy:* [7]

> Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement.

*Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

In *Boys Markets, supra,* the Supreme Court recognized that the congressional policy favoring arbitration of labor disputes [8] would be frustrated unless the federal courts possessed the power to compel arbitration (1) where an agreement to arbitrate the dispute in question could be found (2) under circumstances in which an injunction would have been proper but for the provisions of the Norris-LaGuardia Act. 398 U.S. at 253–54, 90 S.Ct. 1583. More recently, in *Gateway Coal Co. v. UMW,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), the Supreme Court applied the "presumption of arbitrability," 414 U.S. at 379, 94 S.Ct. 629, to safety disputes, where such disputes are not excluded from the arbitration clause of the collective bargaining agreement. The Supreme Court found a no-strike obligation to be implied by the arbitration provision and held that the safety dispute in issue presented a substantial question of contract construction. Concluding that such premises were sufficient to support the issuance of an injunction barring a work stoppage which had arisen over the safety dispute, the Court rejected any approach which would have allowed the union to make its own subjective evaluation of safety conditions in order to invoke a statutory exception to an implied no-strike agreement, saying:

> * * * Absent the most explicit statutory command, we are unwilling to conclude that Congress intended the public policy favoring arbitration and peaceful resolution of labor disputes to be circumvented by so slender a thread as subjective judgment, however honest it may be.

414 U.S. at 386, 94 S.Ct. at 641.

In this case the union contends there was no violation of the collective bargaining agreement because Article XV specifically permits employees to refuse to pass through a picket line authorized by the union. The company, on the other hand, contends that the no-strike provisions of the contract preclude the union from using picket lines to cause a work stoppage. Therein lies the heart of the dispute, and disputes arising under the collective bargaining agreement are subject to arbitration. The binding arbitration provisions relate to any grievance "involving an interpretation, application or violation of [the] Agreement * * *." There can be little doubt that had the company protested the picket line before the work stoppage occurred the resulting dispute would have been subject to binding arbitration.[9] It makes little sense to argue that because the work stoppage precipitated the dispute it was not a work stoppage "over" a grievance which the parties were contractually bound to arbi-

7. *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Corp.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

8. *See* 29 U.S.C. § 173(d).

9. Likewise, if the company attempted to discipline employees who honored the picket line, the union could file a grievance and compel the company to arbitrate. *See Bethlehem Mines Corp. v. UMW,* 375 F.Supp. 980, 983 (W.D.Pa.1974). The company would have us ignore the authorized picket line clause and hold that the dispute was over the no-strike clause alone. We decline to adopt so broad an interpretation of *Boys Markets* or of *NAPA* and *Monongahela,* especially since the establishment of the picket lines is as much a part of the arbitrable dispute as the fact that employees honored it.

trate. We think the holdings in *NAPA* and *Monongahela* and their progeny are consistent with a congressional purpose to encourage settlement of disputes by arbitration, including situations in which purported exceptions to a no-strike clause under the collective bargaining agreement are in dispute. Injunctive relief, conditioned upon prompt[10] arbitration of the dispute, does not nullify the union's right to establish or honor a picket line; it "only suspends the exercise of the right until its existence is established by an arbitrator's decision." *NAPA Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, supra,* 502 F.2d at 324.

The teachings of the Supreme Court lead us to the conclusion that if (1) the dispute is arguably one which can be resolved by arbitration (we think it is) and (2) the dispute has not been excluded from the scope of the arbitration clause (we hold that it has not), an injunction is proper to safeguard arbitration as the method selected by the parties for the resolution of disputes, provided other common law principles of equity enumerated in *Boys Markets, supra,* 398 U.S. at 254, 90 S.Ct. 1583, are present.

## II.

The company, which had originally demanded arbitration, refused to go forward following the grant of the injunction, contending that the District Judge had "already decided" the arbitrable issue. The company thereby attempted to make capital out of the District Court's remark from the bench that "there is nothing between the union and the company to arbitrate as a grievance on either Waldron or Pine Bluff * * *." This assessment was error.

While an arbitrable dispute will support the issuance of an injunction where a no-strike provision is found or implied in a collective bargaining agreement and a work stoppage has occurred, it does not follow that the company may abandon its demand for arbitration upon obtaining injunctive relief. The *purpose* of the injunction, indeed its only justification as an exception to the Norris-LaGuardia Act provisions, is to suspend the work stoppage in order to permit the dispute to be resolved by means of arbitration. *Boys Markets* expressly requires the District Court to condition the issuance of its injunction upon compliance with an order to arbitrate. 398 U.S. at 254, 90 S.Ct. 1583.[11]

In other respects, however, the District Court substantially applied the proper standard in determining that the issuance of an injunction would be appropriate "despite the Norris-LaGuardia Act."[12] The findings that the union was in apparent violation of the no-strike provisions, that the company had a substantial probability of success in its lawsuit and that the irreparable harm to the company outweighed any damages which the union might suffer as a result of the injunction are supported by the evidence and are not clearly erroneous. But this is not enough to underpin the injunction. The District Court must find the dispute arbitrable and condition the continuance of the injunction upon an express order to arbitrate. It was error to do otherwise. *Cf. Inland Steel Co. v. Local 1545, UMW, supra,* 505 F.2d at 300.

We therefore remand the case to the District Court with instructions to require the dispute be submitted to arbitration within ten days following our

---

**10.** We stress the need for promptness. Unless the District Court so conditions its order that arbitration must closely follow the issuance of the injunction, the economics of the situation rather than the merits of the dispute may decide the outcome, and the union may have been unfairly denied its right to engage in authorized activity. *Boys Markets* was not intended to permit such a result.

**11.** The no-strike obligation is the *quid pro quo* for an agreement to arbitrate. *Boys Markets,*

*Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 248, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). A willingness to arbitrate becomes a threshold requirement of one's seeking to enforce the corresponding part of the bargain.

**12.** *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

mandate as a condition of its injunction, and to frame the issue for arbitration.[13]

While the passage of time has resulted in new collective bargaining agreements, the company's claim for monetary damages caused by the alleged breach remains unresolved. Liability thereunder must await the determination of the arbitrator. *See Drake Bakeries, Inc. v. Local 50, American Bakery Workers,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

Remanded for further proceedings in accordance with these instructions.

---

**13.** In its July 12, 1974, letter the company framed the dispute in this way:

> On July 1, 1974, we previously requested that you take immediate action to discontinue the picketing and strike activity which was commenced at the Pine Bluff and Waldron plants on July 1, 1974. When the request was not honored, a Temporary Restraining Order was entered by the United States District Court.

> You are advised that the Company stands ready and willing to arbitrate, in accordance with the terms of the Collective Bargaining Agreement covering the employees at those plants, any grievance which may have caused the work stoppage.

> The Company regards the work stoppage and strike activity of the Union and employees as a violation of Article XIV of each of the contracts. If you disagree then we demand that the matter be submitted to arbitration in accordance with Article V of each of the agreements.

The union framed the dispute in this way: Whether the honoring of picket lines established and authorized by Food Handlers Local 425 at plaintiff's Pine Bluff and Waldron, Arkansas, operations by employees of Plaintiff employed by it at each of those operations constituted a violation of the existing collective bargaining contract between plaintiff and Food Handlers Local 425 at each of those operations.